

U.S. Department of Justice

Criminal Division

---

Fraud Section, Suite 4100, Bond Building
1400 New York Avenue, NW
Washington, D.C. 20530

March 5, 2010

1C-Cr-0061(ESH)

Laurence Urgenson
Kirkland & Ellis LLP
655 15th Street, N.W.
Washington, DC 20005

USA v.
Re:  Innospec Inc.

FILED

MAR 18 2010

Dear Mr. Urgenson:

U.S. DISTRICT COURT, CLERK

1.   This letter sets forth the full and complete plea offer to your client, Innospec Inc. (referred to herein as "Innospec" or the "defendant"). This offer is by the Fraud Section of the Criminal Division of the U.S. Department of Justice (the "Department") and is binding upon it. It does not bind any other state, local, or foreign prosecuting, administrative, or regulatory authority. This plea agreement (the "Agreement") does not apply to any charges other than those specifically described herein. However, the Department will bring this Agreement and the cooperation of Innospec and its subsidiaries to the attention of other prosecuting authorities or other agencies, if requested to do so by Innospec. Upon receipt and execution by or on behalf of Innospec, the executed letter will itself become the Agreement. The terms of the offer are as follows:

2.   **Charges:** Pursuant to Fed. R. Crim. P. 11(c)(1)(C), Innospec agrees to waive its right to grand jury indictment and its right to challenge venue in the District Court for the District of Columbia, and to plead guilty to a twelve-count information charging: (a) conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371, that is, to commit wire fraud in violation of 18 U.S.C. § 1343; to violate the Foreign Corrupt Practices Act of 1977 ("FCPA"), 15 U.S.C. § 78dd-1 et seq.; and to falsify books and records of the company in violation of the FCPA, 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff(a) (Count One); (b) wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two through Six); (c) violating the FCPA, 15 U.S.C. § 78dd-1 and 18 U.S.C. § 2 (Counts Seven through Eleven); and (d) falsification of its books and records, in violation of 15 U.S.C. § 78m(b)(2)(A), 78m(b)(5), 78ff(a) and 18 U.S.C. § 2 (Count Twelve). It is understood that the guilty plea will be based on a factual admission of guilt to the offenses charged and will be entered in accordance with Rule 11 of the Federal Rules of Criminal Procedure. An authorized representative of Innospec will admit that Innospec is in fact guilty of each of the offenses. By virtue of corporate resolution dated March 5, 2010, defendant has authorized this plea and has empowered its General Counsel, and/or its outside counsel, Kirkland & Ellis LLP, to act on its behalf for purposes of this plea. Innospec agrees that

it has the full legal right, power and authority to enter into and perform all of its obligations under this Agreement and it agrees to abide by all terms and obligations of this Agreement as described herein. The attached "Statement of Facts" is a fair and accurate description of the facts the Department believes it can prove through admissible evidence regarding defendant's actions and involvement in the offense. Innospec is pleading guilty because it is guilty of the charges contained in the accompanying Information and admits and accepts responsibility for the conduct described in the Statement of Facts. Prior to the Rule 11 plea hearing, defendant, through counsel, will adopt and sign the Statement of Facts as a written proffer of evidence by the United States.

3.     **Potential penalties, assessments, and restitution**: The statutory maximum sentence that the Court can impose for each violation of 18 U.S.C. § 371 is a fine not exceeding $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, 18 U.S.C. § 3571; five years' probation, 18 U.S.C. § 3561; and a mandatory special assessment of $400, 18 U.S.C. § 3013. The statutory maximum sentence that the Court can impose for each violation of 15 U.S.C. § 78dd-1 is a fine of $2,000,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, 15 U.S.C. § 78ff(c), 18 U.S.C. § 3571; five years' probation, 18 U.S.C. §3561; and a mandatory special assessment of $400, 18 U.S.C. § 3013. The statutory maximum sentence that the Court can impose for each violation of 15 U.S.C. § 78m is a fine not exceeding $25,000,000 or twice the pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, 15 U.S.C. § 78ff(a), 18 U.S.C. § 3571; five years' probation, 18 U.S.C. § 3561; and a mandatory special assessment of $400, 18 U.S.C. § 3013. The statutory maximum sentences for multiple counts can be aggregated and may run consecutively.

4.     **Federal Sentencing Guidelines:** The parties agree that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court must determine an advisory sentencing guideline range pursuant to the United States Sentencing Guidelines. The Court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in 18 U.S.C. § 3553(a). The parties agree that for purposes of determining an advisory sentencing guideline range, the 2007 Sentencing Guidelines apply as follows:

   a.   **Calculation of Offense Level:**

        i.   Wire Fraud

| | | |
|---|---|---|
| Base Offense Level | U.S.S.G. § 2B1.1(a) | 6 |
| Specific offense characteristics | | |
| Total value/profit between $20-50 million | U.S.S.G. § 2B1.1(b)(2) | +22 |
| Significant conduct outside U.S./ sophisticated means | U.S.S.G. § 2B1.1(b)(9) | +2 |
| **Total Offense Level** | | **30** |

   ii. <u>FCPA (Antibribery Provisions)</u>

| | | |
|---|---|---|
| Base Offense Level | U.S.S.G. § 2C1.1(a)(2) | 12 |
| Specific offense characteristics | | |
|  More than one bribe | U.S.S.G. § 2C1.1(b)(1) | +2 |
|  High level official | U.S.S.G. § 2C1.1(b)(2) | +4 |
|  Total value/profit between $7-20 million | U.S.S.G. § 2C1.1(b)(2) | +20 |
| **Total Offense Level** | | **38** |

   iii. <u>FCPA (Books and Records Provisions)</u>

| | | |
|---|---|---|
| Base Offense Level | U.S.S.G. § 2B1.1(a)(1) | 7 |
| Total value/profit between $20-50 million | U.S.S.G. § 2B1.1(b)(1)(M) | 24 |
| Significant conduct outside the U.S./ sophisticated means | U.S.S.G.§ 2B1.1(b)(9) | 2 |
| **Total Offense Level** | | **33** |

   iv. <u>Combined Offense Level</u>

| | | |
|---|---|---|
| Number of units/increase in offense level | U.S.S.G. § 3D1.4 | 2 |
| **COMBINED OFFENSE LEVEL** | | **40** |

  b. **Calculation of Culpability Score:**

| | | |
|---|---|---|
| Base Score | U.S.S.G. § 8C2.5(a) | 5 |
| Involvement of high-level personnel (200 or more employees) | U.S.S.G. § 8C2.5(b) | +3 |
| Acceptance of responsibility | U.S.S.G. § 8C2.5(g) | -1 |
| **Total Culpability Score** | | **7** |
| *Multipliers* | *U.S.S.G. § 8C2.6* | *1.4-2.8* |

  c. **Calculation of Fine Range:**

| | |
|---|---|
| Base Fine: | |
|  Greater of: | |
|  (1) the amount from table in U.S.S.G. § 8C2.4 corresponding to offense level of 40 | $72,500,000 |
|  or | |
|  (2) the pecuniary gain/loss from the offense | $53,522,070 |
| **Base Fine** | **$72,500,000** |
| **Fine Range** U.S.S.G. § 8C2.7 | **$101,500,000-203,000,000** |

d.  **Inability to Pay**

U.S.S.G. § 8C3.3(b) provides that a court may impose a fine below that otherwise required pursuant to U.S.S.G. § 8C2.7 if the court finds that the company "is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay the minimum fine required by § 8C2.7.... *Provided*, that the reduction under this subsection shall not be more than necessary to avoid substantially jeopardizing the continued viability of the organization." The parties agree that the defendant is not able, and with the use of a reasonable installment schedule, is not likely to become able to pay the minimum fine of $101,500,000 prescribed by the Sentencing Guidelines, particularly in light of fines and other penalties being assessed by other enforcement agencies.

Innospec represents that its total ability to pay all enforcement agencies is $40,200,000, including $28,800,000 to be paid on a fixed basis and $11,400,000 to be paid on a contingent basis, and that, were it to pay more, it would threaten the ongoing viability of the company. In light of the interests of the other enforcement agencies, $14,100,000 of that amount will be paid to the Department, $11,200,000 will be paid to the Securities and Exchange Commission, $2,200,000 will be paid to the Office of Foreign Assets Control, and $12,700,000 will be paid to authorities in the United Kingdom.

5.  **Penalties and Assessments**: Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Department and the defendant agree that the appropriate sentence in the case, after consideration of (a) the Sentencing Guidelines, primarily the defendant's inability to pay; (b) defendant's recognition and affirmative acceptance of responsibility for its criminal conduct; (c) defendant's cooperation with and assistance in the investigation, including conduct of an internal investigation; (d) defendant's payments of fines or disgorgement in other related proceedings both in the U.S. and in the United Kingdom; (e) defendant's compliance and remediation efforts, including implementation of remedial measures and the termination of employees involved in the misconduct; and (f) the factors set forth in 18 U.S.C. § 3553(a), is a criminal fine in the amount of $14,100,000 and a special assessment of $2,800. Although this represents a number below the advisory sentencing guideline range, the parties agree and stipulate that under U.S.S.G. § 8C3.3(b), and in light of the fines and penalties assessed by other law enforcement agencies and described in the Department's Sentencing Memorandum, Innospec "is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay the minimum fine required by § 8C2.7." Defendant acknowledges that no tax deduction may be sought in connection with the payment of this $14,100,000 penalty. This $14,100,000 fine and the $2,800 special assessment shall be paid to the Clerk of Court, United States District Court for the District of Columbia, in two ways:

a.  <u>Fixed Payments</u>. The Defendant shall pay five fixed installments, as follows:

4

(i) a payment of $3,100,000 plus the $2,800 special assessment within thirty (30) days of sentencing;

(ii) a payment of $1,000,000 on or before December 31, 2010;

(iii) a payment of $1,000,000 before December 31, 2011;

(iv) a payment of $875,000 on or before December 31, 2012; and

(v) a payment of $1,725,000 on or before December 31, 2013.

b. In addition to these fixed installments, on or before December 31 of each year beginning with December 31, 2010, Defendant shall pay no less than $2,500 per metric ton of anti-knock compound (including, but not limited to, tetra ethyl lead, methylcyclopentadienyl manganese tricarbonyl, and ferrocene) sold to the Republic of Iraq in the preceding year, until such time as such payments total $6,400,000, or this Agreement expires, whichever occurs first.

6. **Organizational Probation**: The parties agree that a five-year term of organizational probation is appropriate in this case and shall include, as a condition of probation, the retention of an independent corporate monitor as described in Attachment D, as well as any other conditions ordered by the Court. Innospec agrees to create and implement a Compliance Code, which, at a minimum, contains all of the obligations and provisions described in Attachment C. The parties further agree that restitution is not required.

7. **Court is Not Bound**: Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement, (b) advise defendant's counsel that the Court is not required to follow the Agreement and afford defendant the opportunity to withdraw its plea, and (c) advise defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward defendant than the Agreement contemplated. Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

8. **Waiver of Rights**: Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. Defendant expressly warrants that it has discussed these rules with its counsel and understands them. Solely to the extent set forth below, defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Specifically, defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with this Agreement are admissible against it for any purpose in any U.S. federal criminal proceeding if, even though the Department has fulfilled all of its obligations under this Agreement and the Court has imposed the agreed-upon sentence, Innospec nevertheless withdraws its guilty plea.

        a.      The parties further agree, with the permission of the Court, to waive the requirement for a pre-sentence report pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A), based on a finding by the Court that the record contains information sufficient to enable the Court to meaningfully exercise its sentencing power. The parties agree, however, that in the event the Court orders the preparation of a pre-sentence report prior to sentencing, such order will not affect the Agreement set forth herein.

        b.      The parties further agree to ask the Court's permission to combine the entry of the plea and sentencing into one proceeding. However, the parties agree that in the event the Court orders that the entry of the guilty plea and sentencing hearing occur at separate proceedings, such an order will not affect the Agreement set forth herein.

        c.      If the Court orders a pre-sentence investigation report or a separate sentencing date, the parties agree to waive the time requirements for disclosure of and objections to the pre-sentence investigation report under Fed. R. Crim. P. 32(e), so as to accommodate a sentencing hearing prior to the date that would otherwise apply. At the time of the plea hearing, the parties will suggest mutually agreeable and convenient dates for the sentencing hearing with adequate time for (a) any objections to the pre-sentence report, and (b) consideration by the Court of the pre-sentence report and the parties' sentencing submissions.

9.    **Press Releases:** Defendant agrees that if Innospec or any of its subsidiaries issues a press release in connection with this Agreement, defendant shall first consult the Department to determine whether (a) the text of the release is true and accurate with respect to matters between the Department and defendant; and (b) the Department has no objection to the release. Statements at any press conference concerning this matter shall be consistent with this press release.

10.    **Sales, Mergers or Transfers:** Except as may otherwise be agreed by the parties hereto in connection with a particular transaction, defendant agrees that in the event it sells, merges or transfers all or substantially all of its business operations, or all or substantially all of operating divisions, as they exist as of the date of this Agreement, whether such sale(s) is/are structured as a stock or asset sale, merger, or transfer, Innospec shall include in any such contract for sale, merger or transfer, a provision fully binding the purchaser(s) or any successor(s) in interest thereto to the obligations described in this Agreement. In considering requests for exemption from or modifications of this requirement, the Department agrees to consider in good faith Innospec's compliance history with respect to the business, and all other relevant facts and circumstances including the need for and cost of compliance with this provision.

11.    **Continuing Cooperation:** Innospec shall: (a) plead guilty as set forth in this Agreement; (b) abide by all sentencing stipulations contained in this Agreement; (c) appear, through its duly appointed representatives, as ordered for all court appearances and obey any other ongoing court order in this matter; (d) commit no further crimes; (e) be truthful at all times with the Court; (f) pay the applicable fine and special assessment; and (g) continue to cooperate

fully with the Department, the Federal Bureau of Investigation, the Office of Foreign Assets Control, the Federal Trade Commission, and the U.S. Securities and Exchange Commission, consistent with applicable law and regulation including labor, data protection, and privacy laws. At the request of the Department, Innospec shall also cooperate fully with such foreign law enforcement authorities and agencies, and in such manner, as the parties may agree. Innospec shall truthfully disclose all non-privileged information with respect to the activities of Innospec and its subsidiaries, its present and former directors, officers, employees, agents, consultants, contractors, and subcontractors, concerning all matters relating to corrupt payments in connection with their operations, related books and records and internal controls, about which Innospec has any knowledge and about which the Department, the Federal Bureau of Investigation, the Office of Foreign Assets Control, the Federal Trade Commission, and the U.S. Securities and Exchange Commission, or, at the request of the Department, any mutually agreed upon foreign law enforcement authorities and agencies, shall inquire.

This obligation of truthful disclosure includes the obligation, consistent with applicable law or regulation including labor, data protection, and privacy laws, to provide, upon request, any non-privileged document, record, or other tangible evidence in the custody and control of Innospec, relating to such corrupt payments, books and records, and internal controls about which the aforementioned authorities and agencies shall inquire of Innospec, subject to the direction of the Department where appropriate. In addition, Innospec agrees to recommend orally and in writing that all Innospec officers, directors, employees, agents, and consultants cooperate fully with any investigation or prosecution conducted by any of the aforementioned authorities and agencies relating to corrupt payments and related books and records, sanctions violations, anti-trust violations, and internal controls, including appearing for interviews and testimony in the United States or elsewhere, and shall pay reasonable costs associated with such cooperation. Nothing in this Agreement shall be construed to require Innospec to conduct any further investigation other than as necessary to identify and produce relevant non-privileged documents, records, or other tangible evidence within the custody and control of Innospec.

12. **Remediation**: Innospec agrees, for itself and its subsidiaries, to maintain a compliance and ethics program that includes, at a minimum, the basic components set forth in Attachment C, which is hereby incorporated herein. Innospec's program must be reasonably designed to detect and deter violations of the Foreign Corrupt Practices Act and similar anti-corruption laws, both domestic and foreign, as well as U.S. sanctions laws and regulations; to ensure that its books, records, and accounts, in reasonable detail, accurately and fairly reflect the transactions and dispositions of its assets; and to ensure that it has a system of internal accounting controls sufficient to provide reasonable assurances that: (a) transactions are executed with management's general or specific authorization; (b) transactions are recorded as necessary (i) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (ii) to maintain accountability for assets; (c) access to assets is permitted only in accordance with management's general or specific authorization; and (d) the recorded accountability for assets is compared with the

existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

      13.    **Corporate Monitor**: Innospec agrees to engage an independent corporate compliance monitor ("the Monitor") within sixty (60) calendar days of signing this Agreement. Within thirty (30) calendar days after the signing of this Agreement, and after consultation with the Department, Innospec will recommend to the Department three qualified Monitor candidates. The Monitor shall have, at a minimum, the following qualifications:

      a.    Demonstrated expertise with respect to the FCPA, including experience counseling on FCPA issues;

      b.    Experience designing and/or reviewing corporate compliance policies, procedures, and internal controls, including FCPA-specific policies, procedures, and internal controls;

      c.    The ability to access and deploy resources as necessary to discharge the Monitor's duties as described in the Agreement; and

      d.    Sufficient independence from Innospec to ensure effective and impartial performance of the Monitor's duties as described in this Agreement.

The Department retains the right, in its sole discretion, to accept or reject any Monitor candidate proposed by Innospec pursuant to the Agreement. In the event the Department rejects a proposed Monitor, Innospec shall propose another candidate within ten (10) calendar days after receiving notice of the rejection. The Department will consult with the Serious Fraud Office of the United Kingdom throughout the process to ensure the Monitor selected is also acceptable to those authorities. This process shall continue until a Monitor acceptable to both parties and the Serious Fraud Office is chosen. The Department may also propose the names of qualified Monitor candidates for consideration. The term of the monitorship, as set forth in Attachment D, shall commence upon the Department's acceptance of a Monitor candidate proposed by Innospec.

The Monitor will be retained by Innospec for a period of not less than three (3) years from the date the Monitor is selected and shall continue until five (5) years from the date the Monitor is selected, or until all financial obligations described in paragraph 5(b) are completed, whichever occurs first, subject to certain conditions pursuant to which the Department may either reduce or extend the term. The term of the monitorship, including the circumstances which may support a reduction or extension of the term, as well as the Monitor's powers, duties, and responsibilities will be as set forth in Attachment D. Innospec may not employ or be affiliated with the Monitor for a period of not less than one year from the date of the termination of the monitorship.

14.     **Department Concessions:**  In exchange for the defendant's guilty plea and the complete fulfillment of all of the defendant's obligations under this Agreement, the Department agrees not to use any information related to the conduct described in the accompanying Information and Statement of Facts, or any other conduct disclosed to the Department prior to the date of this Agreement, against the defendant or any of its present or former subsidiaries, in any criminal case except in a prosecution for perjury or obstruction of justice, in a prosecution for making a false statement after the date of this Agreement, or in a prosecution or other proceeding relating to any crime of violence.  In addition, the Department agrees that it will not bring any criminal charge against the defendant, or any of its present or former subsidiaries, for conduct (i) that arises from or relates in any way to the conduct of the defendant or its present and former employees, consultants, and agents alleged in the accompanying Information and Statement of Facts or any similar conduct that took place prior to the date of this Agreement, or (ii) that arises from or relates in any way to information disclosed by the defendant to the Department prior to the date of this Agreement.  This paragraph does not provide any protection against prosecution for any corrupt payments, false accounting, sanctions violations, or circumvention of internal controls, if any, made in the future by the defendant, or any of its officers, directors, employees, agents, or consultants, whether or not disclosed by the defendant pursuant to the terms of this Agreement.  This Agreement will not close or preclude the investigation or prosecution of any natural persons, including any current or former officers, directors, employees, stockholders, consultants, or agents of the defendant, of its present or future subsidiaries who may have been involved in any of the matters set forth in the accompanying Information or Statement of Facts, or in any other matters.  Finally, the Department agrees that it will file a Sentencing Memorandum in support of the proposed agreed-upon sentence that will include a description of (a) relevant facts, (b) the nature of the offenses, and (c) Innospec's cooperation and compliance and remediation measures.  The Department further agrees to cooperate with Innospec, in a form and manner to be agreed, in bringing facts relating to the nature of the charges and to Innospec's cooperation, remediation, and its present reliability and responsibility as a government contractor to the attention of other governmental authorities as requested.

15.     **Full Disclosure/Reservation of Rights:**  In the event the Court directs the preparation of a pre-sentence report, the Department will fully inform the preparer of the pre-sentence report and the Court of the facts and law related to the defendant's case.  Except as set forth in this Agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

16.     **Waiver of Appeal Rights:**  The defendant knowingly, intelligently, and voluntarily waives its right to appeal the conviction in this case.  The defendant similarly knowingly, intelligently, and voluntarily waives its right to appeal the sentence imposed by the Court, provided such sentence is consistent with the terms of this Agreement.  The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the defendant violates this Agreement; or (c) the plea is later

withdrawn. The Department is free to take any position on appeal or any other post-judgment matter.

17. **Breach of Agreement:** The defendant agrees that if it fails to comply with any of the provisions of this Agreement, makes false or misleading statements before the Court, commits any further crimes, or attempts to withdraw the plea after sentencing even though the Department has fulfilled all of its obligations under this Agreement and the Court has imposed the sentence (and only the sentence) provided in this Agreement, the Department will have the right to characterize such conduct as a breach of this Agreement. In the event of such a breach, (a) the Department will be free from its obligations under the Agreement and may take whatever position it believes appropriate as to the sentence (for example, should the defendant commit any conduct after the date of this Agreement – examples of which include but are not limited to, obstruction of justice and false statements to law enforcement agents, the probation office, or the Court – the Department is free under this Agreement to seek an increase in the sentence based on that post-Agreement conduct); (b) the defendant will not have the right to withdraw the guilty plea; (c) the defendant shall be fully subject to criminal prosecution for any other crimes which it has committed or might commit, if any, including perjury and obstruction of justice; and (d) the Department will be free to use against defendant, directly and indirectly, in any criminal or civil proceeding any of the information or materials provided by defendant pursuant to this Agreement, as well as the admitted Statement of Facts.

In the event of such breach, any such prosecutions of the defendant not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the running of the applicable statute of limitations in the interval between now and the commencement of such prosecutions. The defendant knowingly and voluntarily agrees to waive any and all defenses based on the statute of limitations for any prosecutions commenced pursuant to the provisions of this paragraph.

18.     **Complete Agreement:**  No agreements, promises, understandings, or representations have been made by the parties or their counsel other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by the defendant, the defendant's counsel, and an attorney for the U.S. Department of Justice, Criminal Division, Fraud Section.  If the foregoing terms and conditions are satisfactory, Innospec may indicate its assent by signing the Agreement in the space indicated below and returning the original once it has been signed by Innospec and its counsel.

DENIS J. MCINERNEY
Chief
Fraud Section, Criminal Division

By: *Kathleen M Hamann*
Kathleen M Hamann, Trial Attorney
Fraud Section, U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005

**AGREED:**

**FOR INNOSPEC INC:**

*Laurence Urgenson*
Laurence Urgenson
Kirkland & Ellis LLP
Counsel for Innospec Inc.

*David E. Williams*
David E. Williams
Vice President and General Counsel
Innospec Inc.

Signed at Washington, D.C., on this 5th day of March, 2010.

## OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with counsel for Innospec Inc. ("Innospec"). I understand the terms of this Agreement and voluntarily agree, on behalf of Innospec, to each of its terms. Before signing this Agreement, I consulted with the attorney for Innospec. The attorney fully advised me of the rights of Innospec, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed this Agreement with the Board of Directors of Innospec. I have advised, and caused outside counsel for Innospec to advise, that Board fully of the rights of Innospec, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of Innospec, in any way to enter into this Agreement. I am also satisfied with the attorney's representation in this matter. I certify that I am an officer of Innospec and that I have been duly authorized by Innospec to execute this Agreement on behalf of Innospec.

Date: March 5, 2010

Innospec Inc.

By: _____
David E. Williams
Vice President and General Counsel

## CERTIFICATE OF COUNSEL

I am counsel for Innospec Inc. ("Innospec") in the matter covered by this Agreement. In connection with such representation, I have examined relevant Innospec documents and have discussed this Agreement with the Innospec Board of Directors. Based on my review of the foregoing materials and discussions, I am of the opinion that: the representative of Innospec has been duly authorized to enter into this Agreement on behalf of Innospec and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of Innospec and is a valid and binding obligation of Innospec. Further, I have carefully reviewed this Agreement with the Board of Directors and General Counsel of Innospec. I have fully advised them of the rights of Innospec, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To my knowledge, the decision of Innospec to enter into this Agreement is an informed and voluntary one.

Date: March 5, 2010

Laurence Urgenson
Kirkland & Ellis LLP
Counsel for Innospec Inc.