## ATTACHMENT D

## CORPORATE COMPLIANCE MONITOR

FILED
MAR 18 2010
U.S. DISTRICT COURT

The duties and authority of the Corporate Compliance Monitor (the "Monitor"), and the obligations of Innospec Inc. ("Innospec")[1] with respect to the Monitor and the Department, are as described below:

    1.    Innospec shall retain the Monitor for a period of not less than three (3) years. Subject to certain conditions specified below which would, in the sole discretion of the Department, allow for a reduction or extension of the term (the "Term of the Monitorship"), the Monitor shall be retained until the expiration of the Plea Agreement or until the financial obligations described in paragraph 5(b) of the Plea Agreement are satisfied, whichever occurs first.

    2.    The Monitor's primary responsibility is to assess and monitor Innospec's compliance with the terms of this Agreement so as to specifically address and reduce the risk of any recurrence of Innospec's misconduct. During the Term of the Monitorship, the Monitor will evaluate, in the manner set forth in paragraphs 3 through 10 below, the effectiveness and implementation of the corporate compliance program, internal controls, and financial reporting policies and procedures of Innospec as they relate to Innospec's current and ongoing compliance with the anti-bribery provisions of the FCPA and other anti-corruption laws applicable to Innospec (collectively, the "anti-corruption laws") and take such reasonable steps as, in his or her view, may be necessary to fulfill the foregoing mandate (the "Mandate").

    3.    Innospec shall cooperate fully with the Monitor, and the Monitor shall have the authority to take such reasonable steps as, in his view, may be necessary to be fully informed about Innospec's compliance program within the scope of the Mandate in accordance with the principles set forth herein and applicable law, including data protection and labor laws and regulations applicable to Innospec. To that end, Innospec shall: provide the Monitor access to Innospec's documents and resources; not limit such access, except as provided in this paragraph; and provide guidance on applicable laws (such as relevant data protection and labor laws). Innospec shall provide the Monitor with access to all information, documents, records, facilities, and/or employees, as requested by the Monitor, that fall within the scope of the Mandate of the Monitor under this Agreement. Any disclosure by Innospec to the Monitor concerning corrupt payments shall not relieve Innospec of any otherwise applicable obligation to truthfully disclose such matters to the Department.

---

[1] All references to "Innospec" include all subsidiaries and affiliated entities. These affiliated entities include, but are not limited to, Innospec International Ltd. and Innospec Ltd., United Kingdom corporations, Alcor Chemie Vetreibs GmBH, a Swiss corporation; and Bycosin AG, a Swedish corporation.

        a.      The parties agree that no attorney-client relationship shall be formed between Innospec and the Monitor.

        b.      In the event that Innospec seeks to withhold from the Monitor access to information, documents, records, facilities, and/or employees of Innospec which may be subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or where Innospec reasonably believes production would otherwise be inconsistent with applicable law, Innospec shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor. If the matter cannot be resolved, at the request of the Monitor, Innospec shall promptly provide written notice to the Monitor and the Department. Such notice shall include a general description of the nature of the information, documents, records, facilities, and/or employees that are being withheld, as well as the basis for the claim. The Department may then consider whether to make a further request for access to such information, documents, records, facilities, and/or employees. To the extent Innospec has provided information to the Department in the course of the investigation leading to this action pursuant to a non-waiver of privilege agreement, Innospec and the Monitor may agree to production of such information to the Monitor pursuant to a similar non-waiver agreement.

        4.      To carry out the Mandate during the Term of the Monitorship, the Monitor shall conduct an initial review and prepare an initial report, followed by up to two (2) follow-up reviews and reports as described below. With respect to each review, after consultation with Innospec and the Department, the Monitor shall prepare a written work plan, which shall be submitted no fewer than sixty (60) calendar days prior to commencing each review to Innospec and the Department for comment, which comment shall be provided no more than thirty (30) calendar days after receipt of the written work plan. The Monitor's work plan for the initial review shall include such steps as are reasonably necessary to conduct an effective initial review in accordance with the Mandate, including developing an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the date of acceptance of this Agreement by the Court. In developing such understanding, the Monitor is to rely to the extent possible on available information and documents provided by Innospec, and it is not intended that the Monitor will conduct his or her own inquiry into those historical events. In developing each work plan and in carrying out the reviews pursuant to such plans, the Monitor is encouraged to coordinate with Innospec personnel, including auditors and compliance personnel, and, to the extent the Monitor deems appropriate, he or she may rely on Innospec processes, on the results of studies, reviews, audits and analyses conducted by or on behalf of Innospec and on sampling and testing methodologies. Any disputes between Innospec and the Monitor with respect to the work plan shall be decided by the Department in its sole discretion.

        5.      The initial review shall commence no later than one hundred twenty (120) calendar days from the date of the engagement of the Monitor (unless otherwise agreed by Innospec, the Monitor and the Department), and the Monitor shall issue a written report within one hundred twenty (120) calendar days of initiating the initial review, setting forth the Monitor's

assessment and making recommendations reasonably designed to improve the effectiveness of Innospec's program for ensuring compliance with the anti-corruption laws. The Monitor is encouraged to consult with Innospec concerning his or her other findings and recommendations on an ongoing basis, and to consider and reflect Innospec's comments and input to the extent the Monitor deems appropriate. The Monitor need not in his or her initial or subsequent reports recite or describe comprehensively Innospec's history or compliance policies, procedures, and practices, but rather may focus on those areas with respect to which the Monitor wishes to make recommendations for improvement or which the Monitor otherwise concludes merit particular attention. The Monitor shall provide the report to the Board of Directors of Innospec and contemporaneously transmit copies to Mark F. Mendelsohn (or his successor), Deputy Chief, Fraud Section, Criminal Division, U.S. Department of Justice, 10th and Constitution Ave., N.W., Bond Building, Fourth Floor, Washington, DC 20530. After consultation with Innospec, the Monitor may extend the time period for issuance of the report for up to sixty (60) calendar days with prior written approval of the Department.

      6.     Within one hundred and twenty (120) calendar days after receiving the Monitor's report, Innospec shall adopt all recommendations in the report; provided, however, that within sixty (60) calendar days after receiving the report, Innospec shall notify the Monitor and the Department in writing of any recommendations that Innospec considers unduly burdensome, inconsistent with local or other applicable law or regulation, impractical, unduly costly, or otherwise inadvisable. With respect to any recommendation that Innospec considers unduly burdensome, inconsistent with local or other applicable law or regulation, impractical, unduly costly, or otherwise inadvisable, Innospec need not adopt that recommendation within that time but shall propose in writing an alternative policy, procedure, or system designed to achieve the same objective or purpose. As to any recommendation on which Innospec and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within forty-five (45) calendar days after Innospec serves the written notice. In the event Innospec and the Monitor are unable to agree on an acceptable alternative proposal, Innospec shall promptly consult with the Department. Any disputes between Innospec, on the one hand, and the Monitor, on the other hand, with respect to the recommendations shall be decided by the Department in its sole discretion. The Department may consider the Monitor's recommendation and Innospec's reasons for not adopting the recommendation in determining whether Innospec has fully complied with its obligations under this Agreement. Pending such determination, Innospec shall not be required to implement any contested recommendation(s). With respect to any recommendation that the Monitor determines cannot reasonably be implemented within one hundred and twenty (120) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Department.

      7.     The Monitor shall undertake two (2) follow-up reviews to carry out the Mandate. If, reasonably promptly after completing the first follow-up review, the Monitor and Innospec mutually agree that Innospec's compliance program is reasonably designed and implemented to detect and prevent violations of the anti-corruption laws and is functioning effectively, and that further monitoring and review is not warranted, the Monitor may apply to the Department for

permission to forego further followup reviews. If the Department approves, the Term of the Monitorship shall be reduced accordingly. Conversely, if, reasonably promptly after completing the second follow-up review, the Monitor and the Department mutually agree that Innospec has not by that time successfully satisfied its obligations under the Agreement with respect to the Monitor's Mandate, the Term of the Monitorship shall be extended for one additional year, and the Monitor shall undertake a third follow-up review in accordance with the procedures for such follow-up reviews set out in the Agreement.

8. Within one hundred and twenty (120) calendar days of initiating each follow-up review, the Monitor shall: (a) complete the review; (b) certify whether the compliance program of Innospec, including its policies and procedures, is reasonably designed and implemented to detect and prevent violations within Innospec of the anti-corruption laws and is functioning effectively; and (c) report on the Monitor's findings in the same fashion as set forth in paragraph 5 with respect to the initial review. The first follow-up review shall commence one year after the initial review commenced. The second follow-up review, unless one is deemed unnecessary by the Department, shall commence one year after the second follow-up review commenced. After consultation with Innospec, the Monitor may extend the time period for these follow-up reviews for up to sixty (60) calendar days with prior written approval of the Department.

9. In undertaking the assessments and reviews described in paragraphs 4 through 8 of this Agreement, the Monitor shall formulate conclusions based on, among other things: (a) inspection of relevant documents, including Innospec's current anti-corruption policies and procedures; (b) on-site observation of selected systems and procedures of Innospec at sample sites, including internal controls and record-keeping and internal audit procedures; (c) meetings with, and interviews of, relevant employees, officers, directors and other persons at mutually convenient times and places; and (d) analyses, studies, and testing of Innospec's compliance program with respect to the anticorruption laws.

10. Should the Monitor, during the course of his or her engagement, discover that questionable or corrupt payments or questionable or corrupt transfers of property or interests may have been offered, promised, paid, or authorized by any entity or person within Innospec, or any entity or person working directly or indirectly for Innospec, either (a) after the date on which this Agreement is accepted by the Court or (b) that have not been adequately dealt with by Innospec (collectively, "improper activities"), the Monitor shall promptly report such improper activities to Innospec's General Counsel for further action. If the Monitor believes that any improper activity or activities may constitute a significant violation of law, the Monitor shall also report such improper activity to the Department. The Monitor shall disclose improper activities in his or her discretion directly to the Department, and not to the General Counsel, only if the Monitor believes that disclosure to Innospec's General Counsel would be inappropriate under the circumstances, and in such case should disclose the improper activities to Innospec's General Counsel as promptly and completely as the Monitor deems appropriate under the circumstances. The Monitor shall address in his or her reports the appropriateness of Innospec's response to all improper activities, whether previously disclosed to the Department or not. Further, in the event

that Innospec, or any entity or person working directly or indirectly within Innospec, refuses to provide information necessary for the performance of the Monitor's responsibilities, if the Monitor believes that such refusal is without just cause, the Monitor shall disclose that fact to the Department. Innospec shall not take any action to retaliate against the Monitor for any such disclosures or for any other reason. The Monitor may report any criminal or regulatory violations by Innospec or any other entity discovered in the course of performing his or her duties in the same manner as described above.

11.   At least annually, and more frequently if appropriate, representatives from Innospec and the Department will meet together to discuss the monitorship and any suggestions, comments or improvements Innospec may wish to discuss with or propose to the Department.